THE PEOPLE, FOR USE, ETC.,

v.

JANE A. BROOKS.

*Action of Debt on Guardian's Bond—When Cause of Action Arises— Administration—Limitation of Two Years—Sec. 70 of Statute—Statute of Frauds—Sec. 12—Conflict of Evidence.*

1. A guardian's trust expires the instant his ward attains his majority, and it becomes his immediate duty to settle with the ward, and to pay and deliver over all money or property in his hands belonging to him. A failure to make such settlement and payment is a breach of the guardian's bond upon which a cause of action at once arises against the sureties under the statute.

2. The limitation prescribed by Sec. 70, of the statute in relation to the administration of estates, is available as a defense by the heirs and other distributees of the testator or intestate as well as by the executor or administrator.

3. Where, at the date of letters testamentary, a claimant is under the disability of infancy, he has two years after such disability is removed within which to present his claim. If not presented within that time, the claim will be barred as to the assets inventoried or accounted for by the executors prior to the expiration of the period of limitation.

4. The judgment of the Probate Court, awarding distribution, is a judgment *in rem,* and is binding on all creditors and others who had an opportunity to be heard.

5. Suits by creditors of an estate against heirs or devisees, in respect to personal estate distributed to them, are unauthorized by statute in this State. Such suits seem to be forbidden, at least by implication, by Sec. 12 of the Statute of Frauds.

6. Where the evidence is sharply conflicting very great deference should be paid to the finding of the court below.

[Opinion filed June 22, 1887.]

APPEAL from the Circuit Court of Cook County; the Hon. C. B. SMITH, Judge, presiding.

Messrs. SWETT, GROSSCUP & SWETT and R. W. PIKE, for appellant.

Messrs. WM. H. SWIFT and C. H. & C. B. WOOD, for appellee.

BAILEY, J.   This was debt on a guardian's bond, brought by the people, for the use of Sexton, against Jane A. Brooks, the widow and heir at law of Joseph P. Brooks, one of the sureties on the bond.   A former judgment in favor of the plaintiffs was reversed by this court on writ of error at the October term, 1884, on the ground that the evidence, as it then stood, failed to show a delivery of the bond during the lifetime of said Brooks.   Brooks v. People, 15 Ill. App. 570.   A new trial has now been had in the court below before the court, a jury being waived, resulting in a finding and judgment in favor of the defendant, and from that judgment the plaintiffs have appealed to this court.

The defendant insists that the present judgment may be sustained on either of the three following grounds, viz. :

1.   That the plaintiffs' action is barred by the provisions of the 7th subdivision of section 70, chapter 3, of the Revised Statutes.

2.   That, as no real estate descended to the defendant as the heir of Joseph P. Brooks, and as said Brooks left personal property sufficient to discharge all just claims against his estate, no action can be maintained against the defendant.

3.   That the evidence fails to show a delivery of the bond in question in the lifetime of said Brooks.

We will consider each of these propositions in their order.

Joseph P. Brooks died testate and without issue, June 25, 1873, leaving him surviving the defendant, his widow, and leaving an estate consisting wholly of personal property.   On the 17th day of July, 1873, the will of said Brooks was admitted to probate, and on that day letters testamentary thereon were issued to the defendant and one Lyman J. Gage.   Stanley B. Sexton arrived at his majority August 25, 1874.   On the 23d day of June, 1874, the defendant filed to the Probate Court her renunciation of all benefit of any legacy under said will, and her election to take in lieu thereof her dower and legal share of the estate of her husband.   No claim against said estate was filed in the Probate Court at any time by or on behalf of said Sexton.   On the 24th day of November, 1875, said executors filed their final report, showing that, after the

payment of all claims legally established against said estate, and the costs of administration, they had on hand personal estate amounting to something over $300,000; and said court, after finding and adjudging that the defendant, as the widow and heir of her husband, was entitled to all of said personal estate, the same was ordered to be paid over to her, which was accordingly done, and her receipt therefor having been filed in said court, an order was entered declaring said estate settled, and discharging said executors.

By the condition of said bond, Curtis, the guardian, obligated himself, at the expiration of his trust, to settle his accounts in the Probate Court or with the ward, or his legal representatives, and to pay over and deliver all the estate, title papers, and effects remaining in his hands or due from him on such settlement, to the person or persons lawfully entitled thereto. His trust expired the instant his ward attained his majority, and it then became his immediate duty to settle with his ward and pay and deliver over to him all money and property in his, the guardian's, hands, belonging to said ward. A failure to make such settlement and payment was a breach of the bond, and under our statute, the ward was entitled to bring his action against the sureties on the bond, without having a *devastavit* previously established against the principal. R. S., Chap. 103, Sec. 13; McIntyre v. People, 103 Ill. 142.

Was the remedy on the bond in suit barred by the limitation provided in section 70 of the statute in regard to the administration of estates? Said section divides demands against estates of testators and intestates into several classes, the seventh specification being in the following language:

" All other debts and demands, of whatsoever kind, without regard to quality or dignity, which shall be exhibited to the court within two years from the granting of letters, as aforesaid, and all demands not exhibited within two years, as aforesaid, shall be forever barred, unless the creditor shall find other estate of the deceased, not inventoried or accounted for by the executor or. administrator, in which case their claims shall be paid *pro rata* out of such subsequently discovered

estate, saving, however, to *femes covert*, infants, persons of unsound mind, or imprisoned, or without the United States in the employment of the United States, or of this State, the term of two years after their respective disabilities are removed, to exhibit their claims."

The question arises whether the limitation here provided is a bar merely to the claimant's remedy as against the executor, or administrator, or a bar to his right to recover upon his demand against any party, including heirs and devisees. We are of the opinion that the latter effect is to be given to it. In Hall v. Bumstead, 20 Pick. 2, Chief Justice Shaw, in discussing the policy of a statute in many respects similar to ours, says: "Every demand which can be made and enforced against the estate of a deceased person, is to be pursued against the administrator where it can be done, and the whole estate, personal and real, is in effect made assets in his hands to meet such claims. This object is one of great importance, by securing, as far as practicable, an early and final settlement of estates, so that the residuum may be distributed among those entitled, free from incumbrances and charges, which would lead to protracted litigation."

Selover v. Coe, 63 N. Y. 438, was a suit brought against an heir at law of an intestate, to recover the share of real and personal estate received by him, to be applied upon an alleged claim against the estate of said in'estate. A statute of New York provided that, when a claim was presented to an administrator and rejected by him, such claim should be barred unless suit should be brought to enforce it within six months thereafter. It was held that a failure to bring suit within the time limited was a defense, not only to an action against the personal representatives of the intestate, but also to any action brought to enforce the claim against his heirs at law or next of kin.

Graham v. Vining, 2 Tex. 433, was a suit against the administrator and heirs of an intestate. A statute provided that administrators, within two months of the granting of letters of administration, should publish a certain notice requiring all persons having claims against the estate of the intestate, to exhibit the same within the time limited by law,

and also providing that claimants should have twelve months from the date of the letters of administration to present their claims; and it was held that a claim not presented to the administrator within the time prescribed was barred, not only as against him, but also as against the heirs and creditors of the estate. The same rule was again affirmed in Gaston v. Boyd, 52 Tex. 282.

In Carpenter v. Murphy, 57 Wis. 541, the question of limitation arose in a suit brought by the administratrix upon a promissory note executed by the defendant. The defendant, by way of counter claim, sought to avail himself of certain alleged items of indebtedness which, by reason of his failure to present them within the period prescribed by the statute, were barred. The court, in sustaining the limitation as to the counter claim, say: "The defendant having failed to present his claims against the plaintiff's intestate to the commissioners, and the time allowed by law for so doing having elapsed, such claims were absolutely and forever barred, either as a basis of an action or a set-off. The statute did not merely affect the remedy; it extinguished the right."

In the light of the foregoing authorities we are constrained to hold as a rule of law, that the limitation prescribed by section 70 of the statute in relation to the administration of estates, is available as a defense, not only by the executor or administrator, but also by the heirs and other distributees of the testator or intestate.

It is objected, however, in this case, that the plaintiff's right of action did not accrue until more than a year after the date of the letters testamentary, and that he can not for that reason be held to the limitation of two years from date of said letters. That is true, but it is also true that up to the time his right of action accrued he was laboring under the disability of infancy, and by the express terms of the statute the period of limitation did not commence to run until the disability was removed. He had two years from that date within which to present his claim, and his failure to present it within that time barred the claim precisely the same as though he had been under no disability at the date of the letters testamentary, and had failed to present it within two years from that date.

It must be remembered, however, that the bar of the statute is not absolute, but only extinguishes the right of the claimant to have his claim satisfied out of the assets inventoried or accounted for by the executors prior to the time the period of limitation expires. The question thus arises whether the assets distributed to the defendant were inventoried or accounted for by the executors before Sexton's claim was barred by limitation. With this question we have had some difficulty. The inventory filed by the executors, if any such was filed, was not exhibited in evidence, nor is there any evidence showing or tending to show when the property distributed to the defendant came into the possession of the executors. The record is silent on that subject, down to the final report of the executors, and that was more than two years after the date of the letters testamentary, though less than two years after Sexton became of age. The final report, and the receipt for the property turned over to the defendant, show that at that time said property was in the possession of the executors, and that it was, by the very act of distribution, accounted for by them.

The true interpretation of the statute seems to be that, as to persons laboring under disabilities at the date of the letters testamentary or of administration, and who are given two years after their disabilities are removed for the exhibition of their claims, the bar of the statute applies to all the estate of the deceased inventoried or accounted for prior to the expiration of two years from the date of the removal of such disabilities, that is, prior to the expiration of the period of limitation as to them. In this view it sufficiently appears that the property distributed to the defendant was accounted for by the executors, and that Sexton, by failing to exhibit his claim within the period prescribed by the statute, is barred of all right to have said property applied to its satisfaction.

We are also of the opinion that no action can be maintained against the defendant for the reason that Brooks left sufficient personal property to satisfy all just claims against his estate, and that the only way in which the present claimant could enforce application of said property, to the satisfaction

of his claim, was through due course of administration in the Probate Court.

Personal property descends to the executor or administrator, to be administered upon by him, and such administration consists in collecting the estate, converting it into cash, and distributing it to creditors, devisees, heirs and other distributees, according to their respective rights. The jurisdiction of matters of administration is committed by law to the Probate Court, and that court is vested with power to adjudicate upon and finally determine the rights of all claimants to the estate, and to award distribution according to the actual and ultimate rights of all parties concerned. It is the policy of the law that the conflicting interests of all claimants to personal property should be adjudicated upon and finally settled by that court, so that the residuum, after the payment of debts, may be distributed among those entitled, free from incumbrances and charges. It thus becomes incumbent upon all persons having any claim to distribution of personal estate, and who are laboring under no disability, to resort to that court and submit their several claims and rights to its decision, and its judgments awarding final distribution, unless attacked by a direct proceeding, are conclusive as to the ownership of the property distributed.

It follows, from the foregoing principles, that creditors will not be permitted to lie by and remain silent during the course of the administration, and then seek to follow personal property into the hands of the heir or other distributee, and wrest it from him for the purpose of applying it to their debts. The judgment of the Probate Court, awarding distribution, is a judgment *in rem*, and is binding on all creditors and others who had an opportunity to be heard.

We have no statute authorizing suits by creditors against heirs or devisees in respect to personal estate distributed to them, and we think such suits are forbidden, at least by implication, by the twelfth section of the Statute in relation to Frauds and Perjuries. That section provides that when any lands, tenements or hereditaments, or any rents or profits out of the same, shall descend to any heir, or be devised to any

devisee, and the personal estate of the ancestor of such heir, or devisor of such devisee, shall be insufficient to discharge the just demands against such ancestor's or devisor's estate, such heir or devisee shall be liable to the creditor of their ancestor or devisor to the full amount of the lands, tenements or hereditaments, or rents and profits out of the same, as may descend or be devised to said heir or devisee.    The theory of this statute seems to be, that as personal property descends to the administrator to be distributed in due course of administration and real estate descends directly to the heir, the heir is to be charged with the debts of his ancestor when and only when the personal estate, which the law regards as the primary fund for the payment of debts, is insufficient for that purpose.    It is accordingly held in Guy v. Gericks, 85 Ill. 428, that under this statute no action can be maintained against the heir of a decedent, where his personal effects are sufficient to discharge all just demands against his estate.    The same rule was re-affirmed in Laughlin v. Heer, 89 Ill. 119. We are of the opinion then that for this reason also the action in the present case can not be maintained.

On the question as to whether the evidence shows a delivery of the bond in the lifetime of Brooks, the same evidence substantially was introduced on this as on the former trial.    That evidence is discussed sufficiently in our former opinion, and what we then said need not be repeated.    Some additional evidence was introduced by the plaintiffs on this trial conflicting with the case made at the former trial, and tending to prove a delivery of the bond by Brooks on the day of its date.    All that can be said is, that the evidence on the question of delivery is conflicting, and while it might have justified a finding that the bond was in fact delivered as alleged by the plaintiffs, we are unable to say that there is such a preponderance in their favor as would justify us in adopting the conclusion that the bond was in fact delivered in the lifetime of Brooks.    The court below saw and heard the witnesses, and very great deference should be paid to his judgment in relation to a question upon which the evidence is sharply conflicting.

We think that the judgment may be sustained upon either of the grounds above mentioned, and it will therefore be affirmed.

*Judgment affirmed.*